Moncure, P.,
delivered the opinion of the court.
The court is of opinion that the decree which was rendered on the first day of November 1867 in the original cause of Rogers v. Strother &c., and the cross cause of Robey v. Rogers &c., to which two causes this appeal applies and is confined, was a final decree in those causes, notwithstanding the pendency in the same court of the case of Andrew Robey, executor of Lucinda Eawlings, deceased, plaintiff, against Asa Rogers &c., defendants; and notwithstanding the decree thereafter made in the last named cause, on the 21st day of October 1869. By the said decree of the first day of November 1867, and the prior decrees rendered in the first named two causes, the court below gave all the relief which it intended to give in those causes; and having ascertained the balance due by Asa Eogers, the late administrator of Martha Strother, deceased, to her estate, to be $6,889.36, with interest thereon from July. 11th, 1863, until paid; and it appearing to the court proper, in order to the complete administration of the estate of Martha Strother, deceased, that the amount due by Asa Eogers, the late administrator as aforesaid, should be paid to Andrew Eobey, the present administrator de bonis non of said Martha Strother, deceased, who is also the administrator of Lucinda Eawlings, deceased, a creditor of said *421 •estate, to an amount nearly, if not entirely, equal to the said sum of money and interest; the court, therefore, by the said decree of the 1st day of November 1867 decreed that the said Asa Rogers, administrator ■as aforesaid, and his sureties, John D. Rogers, Arthur L. Rogers, and Hamilton Rogers, should pay to the said Andrew Robey, administrator de bonis non of Martha Strother, deceased, the said sum of $6,889.36, with legal interest thereon from July 11th, 1863, until paid. The whole remaining subject of controversy, in the said two suits first above named, was thus decreed to be transferred from the hands of the late administrator to those of the present administrator de bonis non •of said Martha Strother, to be by him disposed of ■among the parties entitled thereto according to their respective rights; and nothing further could be done in said suits except by bill of review or appeal. There was no bill of review in the case, but this appeal was taken; and the question now to be decided is, whether or not it was taken in time.
The court is further of opinion that when the petition for this appeal was presented, to wit: on the 12th day of June 1871, such an appeal was barred by the statute of limitations which was then in force. This is certainly so, according to the express decision of this court in Callaway v. Harding, 23d Gratt. 542, unless the stay law applies to this case. Judge Christian, in delivering the opinion- of the court in that case, reviews the acts of limitation bearing upon it, and comes to the following conclusion thereon: “Upon the plain and obvious construction of the acts above referred to, we think it is clear that the longest period of limitation, within which a petition for an appeal, writ of error and supersedeas can be presented, is two jears, nine months and ten days, as to final judg *422 meats, decrees or orders rendered before the passage of the act approved November 5th, 1870; and as to those rendered after the passage of that act, such period of limitation is two years.”
The judge then says: “ As to what may be the effect of the seventh section of the act passed March 2d, 1866, known as the stay law, it is not necessary to-refer to in this case; for conceding that the- seventh section applies to appeals, writs of error, &c.,in the case before us, more than three years after the expiration of the stay law had elapsed, before the petition for a writ of error was presented.”
While more than two years, nine months and ten days elapsed after the final decree was rendered in the-case under consideration, to wit: the first day of November 1867; and even after the first day of January 1868, when the stay law passed, March 2d, 1866, was, by its terms, to expire, yet such an interval of time did not elapse after the first day of January. 1869, to which day the operation of the said act of March 2d, 1866, was extended by an act passed March 2d, 1867,. and before the 12th day of June 1871, when the petition for an appeal was presented in this case.
It will therefore be necessary for us to do in this-case what was not necessary to be done, and was not done by the court in Callaway v. Harding, supra, nor in the subsequent case of Sexton v. Crockett & als., 28 Gratt. 857; that is, decide whether the seventh section of the stay law, and the act amendatory thereof' as aforesaid, apply to the case.
The court is of opinion that they do not apply to the case; that the 7th section of the stay law never-did apply to an appeal, writ of error, or supersedeas;- and if it ever did, it was repealed as to such application, either expressly or by implication, by an act *423 passed March 15,1867; in either of which views, the petition for an appeal, when presented in this case, was barred by limitation.
First, The acts constituting the stay law, never did apply, nor were intended to apply, to an appeal &c. Section 1, of the act passed March 2, 1866, provides, “that while this act remains in'force, no execution, venditioni exponas, attachment upon a decree or order for the payment of money, or other process to compel the payment of money, or the sale of property for that purpose, shall be issued, or if heretofore issued shall be proceeded with; nor shall there be any sale under a deed of trust, mortgage, pledge or other security,, nor under any judgment, decree or order for the payment of money, except in the cases hereafter provided for, until the first day of January 1868.”
Section 7 provides, that “ the period during which this act shall remain in force, shall be excluded from the computation of the time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy.”
Does this section apply to a right or remedy by appeal &c., or was it intended to be confined to an original right or remedy by suit or action &e. ? The first section applies only to a levy on, or sale of, property under execution &c., and to effectuate its object, there would seem to be really no necessity for staying an original right or remedy, by suit or action. Indeed the act created no stay of such right or remedy, but merely directed the time during which the act should remain in force, to wit: from the date of the passage of the act, March 2, 1866, to the 1st day of January 1868, to be excluded from the computation of the time prescribed by law for the limita *424 tion of such right or remedy. It was perfectly competent for the party entitled to such right or remedy to commence and prosecute it while the act remained in force, though it was not necessary for him to do so in any case, to preserve, or prevent the loss of his right or remedy. . The uninterrupted operation of the statute of limitations in regard to original remedies by suit or action, would not have been inconsistent with the first section of the stay law before set forth; and it may be difficult to account for the adoption of the 7th section aforesaid for any purpose. Statutes of limitation are measures of repose, founded on public policy, which, requires that disputes shall be commenced and settled while the transactions are fresh, and the evidence concerning them is still in existence, and in the power of the parties. There may be a necessity for the suspension of the operation of such statutes during a period of war: according to the maxim, inter arma silent leges. But it is not perceived that there was any necessity, or propriety in such a suspension after the war was over, and the courts were reorganized, and in full operation. Hay, it would seem that the suits and actions, having already been long delayed by the necessities of war, there was reason, rather for expediting, than for longer delaying them, after such necessities had ceased. All that the state of the country seemed to require in that respect after the termination of the war, was, that a levy on, or sale of, property under execution &c., should be stayed; and that was effectually done by the first section of the act."
But whatever necessity or propriety there may have been in providing, as was done by the seventh section of the act for cases of original suits and actions, there would seem to be none whatever for the application of such a provision to a case of *425 ■appeal, &c., to revise the judgment or decree of an inferior court. Such a proceeding is not in its nature instituted to obtain a judgment or decree, nor to enforce the execution of one already obtained; but rather to revise and reverse a judgment or decree. And reason and policy required that if any party were dissatisfied with a judgment or decree on account of any supposed errors therein, he should proceed in a reasonable time, if at all, to endeavor to have them corrected. This view of the subject is confirmed by other acts of the legislature, passed at or about the ■same time with the stay law. On the same day on which that law was passed, to-wit, on the 2d day of March 1866, another act was passed, entitled “an act to preserve and extend the time for the exercise of certain civil rights and remedies;” the first section of which enacts, “that the period between the 17th day of April 1861 and the passage of this act shall be excluded from the computation of the time within which, by the terms or operation of any statute or •rule of law, it may be necessary to commence any action or other proceeding, or to do any other act, to preserve or to prevent the loss of any civil right or remedy, or to avoid any fine, penalty or forfeiture; nor shall the further period, from the expiration of that above prescribed to six months after a supreme court of appeals shall he organized under the present government, be included in the computation of the time within which any party or parties may be required by statute or rule of law to obtain a writ of error, supersedeas, or other process, from the supreme court of appeals of Virginia: provided,” &c. The legislature at the time of the passage of that act, on the 2d of March 1866, well knew that a supreme court of appeals would be organized in a very short *426 time, under the then government; for on the very day after the passage of that act, to-wit, on the 3d day of March 1866, another act was passed “making provisions concerning the organization, jurisdiction and proceedings of said court;” and in a month or two. thereafter, said court was organized and in full operation. Where was the necessity or propriety for postponing the right of appeal to the end of six months after the organization of the court of appeals under the then existing government, if the 7th section of the stay law, enacted on the same day, applied to the case; under which section, in that view, there could be no appeal until after the 1st day of January 1868, which time was afterwards, to-wit, on the 2d of March 1867, extended to the 1st day of January 1869? We cannot suppose that the legislature intended such an incongruity; and we therefore believe that it did not intend to apply the 7th section of the stay law to the right of appeal. And we think this view is conclusively sustained by an act passed March 16, 1867,. which declared that no petition shall be presented for an appeal, &c., to any final judgment, &c., which shall have been rendered more than two years before the petition is presented, blow this act conclusively shows that the legislature thought it important that the time for taking an appeal, &c., should be greatly shortened; for by this act the limitation was reduced from five years to two years. Can'we suppose, with this manifest indication of legislative policy on the subject before our eyes, that the legislature intended, by the obscure and doubtful and general words of the seventh section of the stay law, to extend the time for taking an appeal to the 1st day of January 1868, and then to thfe 1st day of January 1869, when, neither necessity nor convenience required any such. *427 extension, and when, on the contrary, convenience and public policy were opposed to it? We think not. We therefore think that the stay law never did apply, • nor was intended to apply, to an appeal, &c. But if it ever did,
Secondly, it was repealed as to such application, either expressly or by implication, by the said act passed March 15, 1867. On this particular question we deem it unnecessary to add anything to what we have already said, as most of that applies also to this question, and is decisive of it.
We have noticed the case of Sexton v. Crockett ¿fe., 23 Gratt. 857, in which the questions we have been considering were raised, but not decided, the court being equally divided upon them. The reasoning of our brother Bouldin, with whom our brother Anderson concurred in that case, is certainly very strong, but has not shaken our confidence in the views we have expressed; and two of us, Christian and Moncure, still adhere to the views entertained and expressed by them in that case; and another of us, Judge Staples, who did not sit in that case, nor in Callaway v. Harding, supra, having been counsel in both of those cases, concurs with the two. Judge Anderson will speak for himself in regard to the present decision.
The court is therefore of opinion, that this appeal when taken was barred by the statute of limitations, and must be dismissed, but without prejudice to any relief to which the appellant and his sureties, as administrator of Martha Strother, deceased, may he entitled in the said suit of Andrew Robey, executor of Lucinda Rawlings, plaintiif, against Asa Rogers, &c., defendants, now pending in the court below, in which was made the decree of the 21st day of October 1869 as aforesaid. But this court expresses no opinion as *428 to the existence of any right to such relief, nor as to the nature or measure of such right if it exists.
Anderson, J. said: I am not now satisfied that the opinion of Judge Bouldin in Sexton v. Crockett, in which I concurred, as to the effect of the 7th section of the stay law, upon the limitation of appeals and writs of error, is not right; upon which question, in that case the court was equally divided. But a majority of the whole court holding, in the • cause now under judgment, that the said seventh section does not apply to the limitation of the right of appeal, and writs of error, settles the question adversely to the opinion which I have entertained. I must therefore recognize this decision as an exposition of the law, which precludes me from an investigation of the ease before us, upon its merits. Upon these grounds I concur in the judgment.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the decree which was rendered on the first day of November 1867 in the original cause of ‘‘Rogers v. Strother &c.” and the cross cause of “ Robey v. Rogers &c.,” to which two causes this appeal applies and is confined, was a final decree in those causes, notwithstanding the pendency in the same court of the case of Andrew .Robey, executor of Lucinda Rawlings, deceased, plaintiff, against Asa Rogers &c., defendants; and notwithstanding the decree thereafter made in the last named cause, on the 21st day of October 1869. The court is further of opinion, that when the petition for this appeal was presented, to wit: on the 12th day of June 1871, the said appeal *429 was barred by the statute of limitations, which was then in force. Therefore it is decreed and ordered that the said appeal be dismissed, and that the appellant pay to the appellee, Andrew Robey, administrator of Lucinda Rawlings, deceased, his costs by him about his defence in this behalf expended.
But this decree is without prejudice to any relief to which the appellant and his sureties as administrator of Martha Strother, deceased, may be entitled in the said suit of Andrew Robey, executor of Lucinda Raw-lings, deceased, plaintiff, v. Asa Rogers &c., defendíante, now pending in the court below, in which was made the decree of the 21st day of October 1869 as aforesaid. But this court expresses no opinion as to the existence of any right to such relief, nor as to the nature or-measure of such right if it exists.
Which is ordered to be certified to the circuit court of Loudoun county.
Appeal dismissed.